**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| MUSIC CITY METALS CO., INC. | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Case No. 3:17-cv-766** |
| | ) | **Judge Aleta A. Trauger** |
| JINGCHANG CAI *et al.* | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM

Pending before the court are three Motions to Dismiss. HiPacking, Inc., Hyco International Trading Company LP, Jia Ning Liu, Jolyn Junyao Liu, and Shenzhen Hai Pai International Warehousing Services Limited ("Hyco Defendants") have filed a Motion to Dismiss Count III of Plaintiff's Complaint (Docket No. 87), to which Music City Metals Co., Inc., ("MCM") has filed a Response (Docket No. 101), and the Hyco Defendants have filed a Reply (Docket No. 110). Oceanside BBQ Parts Factory Inc., Baldev Sandhu, and Sukhwinder Bedi ("Oceanside Defendants") have filed a Motion to Dismiss (Docket No. 95), to which MCM has filed a Response (Docket No. 106). Xing Chao, Dongguan Haishengxin Hardware Co. Ltd., Family Mart Co., Ltd., Yuzhen Fu, Liao Houbin, Wen Kun, Xiaomei Li, Real Value International Trading Ltd., Xing Xianhong, and Xing Xiusheng ("Miscellaneous Defendants") have filed a Motion to Dismiss (Docket No. 113), to which MCM has filed a Response (Docket No. 119). For the reasons discussed below, the Hyco Defendants' Motion will be denied, and the Oceanside and Miscellaneous Defendants' Motions will be granted in part and denied in part. MCM's claims for copyright infringement based solely on the defendants' use of its product model numbers will be dismissed as to all defendants.

# I. BACKGROUND AND PROCEDURAL HISTORY[1]

MCM is a Nashville-based manufacturer and wholesaler of replacement parts for gas grills. (Docket No. 1 ¶¶ 1, 5.) Because MCM is not the manufacturer of the grills with which its parts are used, its continued success depends on market research to identify parts that are likely to need replacing in popular grill models and its development of replacement parts that will meet those needs. (*Id.* ¶ 7.) MCM's business is not limited to replicating grill manufacturers' original parts, because MCM seeks to provide parts that are usable in more than one model of grill. Accordingly, MCM may develop a part with the necessary features to fulfill that part's designated purpose in multiple different grill models, despite differing structurally and superficially from the part it is replacing in some or all of those grills. (*Id.* ¶¶ 9–10.) Once MCM has developed a grill part that it wishes to make available for sale, it assigns that part a unique model number. MCM maintains that its system of model numbers is well known throughout the industry and identified, in the minds of the relevant buying public, with MCM itself. (*Id.* ¶ 8.)

In light of the wide array of parts offered by MCM and the particularity of the needs of each consumer, MCM compiles and publishes a product catalog that includes original photographs and/or illustrations of the parts alongside model numbers and "fitment data" identifying the models of grill with which the particular parts can be used. (*Id.* ¶ 11.) MCM's catalog is available both in print form and as an electronic database made available to licensed MCM distributors. (*Id.* ¶ 12.) MCM has obtained three federal copyright registrations for versions of its catalogs. (*Id.* ¶ 14; *see* Docket Nos. 1-4, -6, -8.) MCM has not identified any additional copyright registrations that are specific to any of the individual subsidiary elements of

---

[1] The below facts are taken primarily from MCM's Complaint. Except where otherwise noted, the facts are accepted as true for the purposes of the defendants' Motions to Dismiss.

2

those catalogs, such as a copyright registration of any particular photograph or a copyright registration of MCM's fitment data alone.

Although MCM clearly prides itself on the ingenuity and functionality of its parts, it does not, at least in this case, claim any rights to patent protection for any of those parts. Because MCM cannot rely on patents to prevent its competitors from producing and selling functionally similar, or even identical, parts, MCM must instead rely on the accumulated goodwill and reputation from its many years in the industry to maintain its market position. To that end, MCM has obtained federal trademark registrations for the marks MCM and MUSIC CITY METALS ("MCM Marks"), each for use with "distributorship services in the field of gas grill parts; namely, valves, control knobs, heat indicators, ignitor components, lid handles, accessories, rotisserie housings, regulators, hoses, grill plumbing, natural gas grill posts, warming racks, gaslight parts and supplies, hot plates, burners and venturis, cooking grids, and rock grates/heat plates." (Docket Nos. 1-2, 1-3.) MCM has not identified any trademark registrations for its use of the MCM Marks with any good or service other than "distributorship services" for the enumerated products. (*See* Docket No. 1 ¶¶ 15–20.)

MCM claims to have dealt, at least in recent years, with persistent efforts by competitors to trade improperly on MCM's goodwill in order to further their own sales in the gas grill replacement parts market, in particular through the Amazon and eBay e-commerce platforms. In order to combat this allegedly unlawful marketing by its competitors, MCM has initiated and received injunctive relief in a number of actions in this court, namely Civil Case Nos. 3:14-cv-00834, 3:12-cv-01107, and 3:15-cv-00067. (Docket No. 1 ¶¶ 24–32.) As a result of the relief granted to MCM in these prior cases, Amazon froze the accounts of certain allegedly infringing sellers and destroyed or disposed of certain remaining inventory in Amazon's possession. (*Id.* ¶¶

40, 45.) MCM maintains that, despite the relief it received in the prior cases, a number of individuals and entities continue to work in concert or affiliation with the prior defendants to unlawfully market replacement grill parts in manners that infringe upon MCM's rights. (*Id.* ¶¶ 37–106.) Among the parties that MCM has identified with this ongoing unlawful marketing are the Hyco Defendants (*id.* ¶¶ 107–38), Oceanside Defendants (*id.* ¶¶ 213–31), and Miscellaneous Defendants (*id.* ¶¶ 139–45, 150–80). MCM alleges that the various defendants improperly marketed their competitor parts with the MCM Marks, MCM's model numbers, and copyright-protected materials from its catalogs. (*Id.* ¶¶ 268–77.)

On April 27, 2017, MCM filed its Verified Complaint against over sixty named defendants as well as John and Jane Does. (*Id.*) Counts I, II, and III plead, respectively, trademark infringement, unfair competition, and counterfeiting under the Lanham Act against all defendants. (*Id.* ¶¶ 283–300.) Count IV pleads a claim under Tennessee law of unfair competition against all defendants. (*Id.* ¶¶ 301–03.) Count V is a breach of contract claim limited to four defendants who are not movants in any of the instant motions. (*Id.* ¶¶ 304–08.) Count VI pleads a claim for copyright infringement. (*Id.* ¶¶ 309–17.) Counts VII and VIII are claims under the civil provisions of the Racketeer Influenced and Corrupt Organizations Act ("RICO") against all defendants. (*Id.* ¶¶ 318–32.) Count IX pleads a claim for false advertising under the Lanham Act against select defendants. (*Id.* ¶¶ 333–41.) Count X is a claim under the Tennessee Consumer Protection Act related, in particular, to some defendants' use of the phrase "FDA Approved." (*Id.* ¶¶ 342–46.) Although some of the named defendants have yet to appear, the Hyco, Oceanside, and Miscellaneous Defendants have all obtained counsel and entered Notices of Appearance. (Docket Nos. 34, 41, 112.) Their respective Motions to Dismiss followed. (Docket Nos. 87, 95, 113.)

## II. LEGAL STANDARD

In considering a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), a court has three options. It may (1) rule on the motion on the basis of the affidavits and materials submitted by the parties, (2) permit discovery in aid of the motion, or (3) conduct an evidentiary hearing on the merits of the motion. *See Dean v. Motel 6 Operating L.P.*, 134 F.3d 1269, 1272 (6th Cir. 1998). It is in the court's discretion, based on the circumstances of the case, which path to choose. *Id.* In any proceeding, however, the party asserting jurisdiction has the burden of proof. *See Bird v. Parsons*, 289 F.3d 865, 871 (6th Cir. 2002). "Additionally, in the face of a properly supported motion for dismissal, the plaintiff may not stand on his pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction." *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991).

When a court rules on a motion to dismiss for lack of personal jurisdiction based upon the affidavits or other preliminary materials, the party asserting jurisdiction need only make a *prima facie* showing of jurisdiction to defeat the motion. *Theunissen*, 935 F.2d at 1458. In examining whether the party asserting jurisdiction has made this *prima facie* showing, the court is to construe the facts presented in the light most favorable to that party, and the court does not weigh or consider the conflicting facts presented by the other side. *Bird*, 289 F.3d at 871; *see also Estate of Thomson ex rel. Estate of Rakestraw v. Toyota Motor Corp. Worldwide*, 545 F.3d 357, 360-61 (6th Cir. 2008) (referring to the plaintiff's burden in this context as "relatively slight").

Under Fed. R. Civ. P. 12(b)(3), a defendant may move to dismiss a case for improper venue. On such a motion, it is the plaintiff's burden to show that venue is proper. *Gone to the Beach, LLC v. Choicepoint Servs.*, 434 F. Supp. 2d 534, 537–38 (W.D. Tenn. 2006). If the district court finds that the case is "in the wrong division or district" the court "shall dismiss" the

case, or, "if it be in the interest of justice," the court may transfer the case "to any district or division in which it could have been brought." 28 U.S.C. § 1406(a).

In deciding a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court will "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007); *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002). The Federal Rules of Civil Procedure require only that a plaintiff provide "a short and plain statement of the claim that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957). The court must determine only whether "the claimant is entitled to offer evidence to support the claims," not whether the plaintiff can ultimately prove the facts alleged. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

The complaint's allegations, however, "must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To establish the "facial plausibility" required to "unlock the doors of discovery," the plaintiff cannot rely on "legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action," but, instead, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679; *Twombly*, 550 U.S. at 556.

# III. ANALYSIS

## A. Personal Jurisdiction and Venue for Oceanside Defendants

The Oceanside Defendants argue that the court lacks personal jurisdiction over them because they have had insufficient contacts with the State of Tennessee to give rise to either general or specific jurisdiction with regard to MCM's claims. MCM responds that, by failing to seasonably raise the alleged jurisdictional defect, the Oceanside Defendants have submitted to the jurisdiction of the court and waived any challenge based on personal jurisdiction. In the alternative, MCM argues that the Oceanside Defendants' operation of interactive e-commerce websites available to Tennesseans is sufficient to confer specific jurisdiction, as is the Oceanside Defendants' trading on the reputation of a Tennessee-based company.

Because the requirement of personal jurisdiction flows from the Due Process Clause and protects an individual liberty interest, a person who would otherwise be outside the court's reach may submit to jurisdiction by virtue of making an appearance before the court without reserving its right to a jurisdictional challenge. *Gerber v. Riordan*, 649 F.3d 514, 518 (6th Cir. 2011). In deciding whether a defendant has implicitly waived a personal jurisdiction defense by its appearance, the court must determine whether any of the defendant's appearances and filings constituted "legal submission to the jurisdiction of the court." *Id.* at 519. "Only those submissions, appearances and filings that give plaintiff a reasonable expectation that [the defendant] will defend the suit on the merits or must cause the court to go to some effort that would be wasted if personal jurisdiction is later found lacking, result in waiver of a personal jurisdiction defense." *Id.* (internal brackets, citation, and quotation omitted). This analysis requires a consideration of all the relevant circumstances. *King v. Taylor*, 694 F.3d 650, 659 (6th Cir. 2012).

Counsel for the Oceanside Defendants filed a Notice of Appearance on May 25, 2017, that did not in any way identify itself as attempting to effect only a special appearance or to reserve any rights to raise a challenge to personal jurisdiction. (Docket No. 41.) Typically, "a party waives the right to contest personal jurisdiction by failing to raise the issue when making . . . a general appearance." *Gerber*, 649 F.3d at 520 (quoting *Reynolds v. Int'l Amateur Athletic Fed'n*, 23 F.3d 1110, 1120 (6th Cir. 1994)). Even if that Notice of Appearance had not been enough to confer personal jurisdiction, however, the Oceanside Defendants further cemented their waiver by taking several subsequent steps to participate in the case and contest aspects of MCM's allegations on the merits. On June 9, 2017, the Oceanside Defendants filed a Response contesting MCM's request for a preliminary injunction, in which they raised no jurisdictional objections and advanced substantive arguments that their actions did not violate MCM's rights. (Docket No. 67.) On June 22, 2017, counsel for the Oceanside Defendants appeared before the court and argued against that motion. On July 3, 2017, the Oceanside Defendants joined MCM in filing a Joint Motion for Entry of Modified Temporary Restraining Order (Docket No. 91), which the court granted (Docket No. 92). Only thereafter did the Oceanside Defendants file the instant motion contesting jurisdiction. By filing a general appearance, filing meaningful pleadings, and taking part in a hearing before the court, the Oceanside Defendants affirmatively submitted themselves to the court's personal jurisdiction and waived any right to challenge that jurisdiction via a later-filed motion to dismiss.

Finally, even if the Oceanside Defendants had not waived personal jurisdiction, their own description of their activities would be sufficient for the court to conclude that such jurisdiction exists.

Here, the issue of whether this court may exercise personal jurisdiction over the defendants depends on the specific limitations of Tennessee's long-arm statute and the constitutional principles of due process. *Bridgeport Music, Inc. v. Still N The Water Publ'g*, 327 F.3d 472, 477 (6th Cir. 2003). Tennessee's long-arm statute has been consistently construed to extend to the limits of federal due process, and, therefore, the two inquiries are merged, and the court here need only determine whether exercising personal jurisdiction over the defendants is consistent with federal due process requirements.[2] *Id.*

In order for due process to permit the exercise of personal jurisdiction over non-resident defendants, the defendants must have "certain minimum contacts with the [forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Youn v. Track, Inc.*, 324 F.3d 409, 417 (6th Cir. 2003) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). The Supreme Court has identified "general" jurisdiction and "specific" jurisdiction as distinct bases for personal jurisdiction. A demonstration of the contacts necessary for either basis is sufficient to establish personal jurisdiction. *Id.* at 417-18. MCM relies on specific jurisdiction as to the Oceanside Defendants.

---

[2] Tennessee's long-arm statute, as codified at Tenn. Code Ann. § 20-2-214, provides, in relevant part:

    (a) Persons who are non-residents of Tennessee and residents of Tennessee who are outside the state and cannot be personally served with process within the state are subject to the jurisdiction of the courts of this state as to any action or claim for relief arising from:

        (1) The transaction of any business within the state;
        (2) Any tortious act or omission within this state;
        (3) The ownership or possession of any interest in property located within this state;
        (4) Entering into any contract of insurance, indemnity, or guaranty covering any Person, property, or risk located within this state at the time of contracting;
        (5) Entering into a contract for services to be rendered or for materials to be furnished in this state;
        (6) Any basis not inconsistent with the constitution of this state or of the United States;
        (7) Any action of divorce, annulment or separate maintenance where the parties lived in the marital relationship within this state, notwithstanding one party's subsequent departure from this state, as to all obligations arising for alimony, custody, child support, or marital dissolution agreement, if the other party to the marital relationship continues to reside in this state.

*Id.*

The assertion of specific jurisdiction "depends on an affiliatio[n] between the forum and the underlying controversy," such as an "activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 918 (2011) (internal quotation marks and citations omitted). The Sixth Circuit has established a three-part test for determining whether the exercise of specific jurisdiction is consistent with the principles of due process, called the *Mohasco* test. *See S. Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1969). Under this test, the exercise of such jurisdiction is proper if the court finds: "(1) purposeful availment 'of the privilege of acting in the forum state or causing a consequence in the forum state,' (2) a 'cause of action . . . aris[ing] from activities' in the state, and (3) a 'substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.'" *Schneider v. Hardesty*, 669 F.3d 693, 701 (6th Cir. 2012) (quoting *Mohasco*, 401 F.2d at 381). If any of the three requirements is not met, personal jurisdiction may not be invoked. *Miller v. AXA Winterthur Ins. Co.*, 694 F.3d 675, 680 (6th Cir. 2012). Finally, while a motion to dismiss for lack of specific personal jurisdiction may be maintained based on prongs two and three of the *Mohasco* test, purposeful availment is the *sine qua non*, or absolutely indispensable, element of personal jurisdiction, and, therefore, disputes about whether or not there is specific personal jurisdiction in a given case often rise or fall on the issue of purposeful availment. *See Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 550–51 (6th Cir. 2007).

"The operation of an Internet website can constitute the purposeful availment of the privilege of acting in a forum state . . . 'if the website is interactive to a degree that reveals specifically intended interaction with residents of the state.'" *Bird v. Parsons*, 289 F.3d 865, 874 (6th Cir. 2002) (quoting *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 890 (6th Cir.

2002)). The court "distinguishes between interactive websites, where the defendant establishes repeated online contacts with residents of the forum state, and websites that are passive, where the defendant merely posts information on the site." *Cadle Co. v. Schlichtmann*, 123 F. App'x 675, 678 (6th Cir. 2005). A website through which a company sells its goods, provides information about its products, and communicates with its customers is sufficiently interactive to establish its operators' purposeful availment of a forum state. *Sports Auth. Mich., Inc. v. Justballs, Inc.*, 97 F. Supp. 2d 806, 814 (E.D. Mich. 2000). Sukhwinder Bedi's description of the Oceanside Defendants' business model in his affidavit clearly describes their reliance on a classic interactive e-commerce website for the majority of their business. It is from these online listings that the claims in this case arise. (Docket No. 96-1 at 3–4.) The first two requirements of the *Mohasco* test are therefore met. Finally, this case's connection to the district is sufficiently substantial to make jurisdiction reasonable, because it is in this district that the alleged harms to MCM's goodwill are ultimately felt. Accordingly, the court has specific jurisdiction over the Oceanside Defendants.

The Oceanside Defendants argue next that venue in the Middle District of Tennessee is improper for the claims against them, and that the court, therefore, should either dismiss or transfer this action. MCM argues first that the Oceanside Defendants have waived their objection based on venue for the same reasons they have waived their challenge to personal jurisdiction. In the alternative, MCM argues that venue is proper in this court under 28 U.S.C. § 1391.

Insofar as the Oceanside Defendants' objection based on venue is timely, it is without merit. Section 1391(b) requires that an action be brought in: (1) a judicial district where any defendant resides, if all defendants reside in the same state; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part

of the property that is the subject of the action is situated; or (3) a judicial district in which defendants are subject to personal jurisdiction at the time that the action is commenced, if there is no district in which the action may otherwise be brought. *Id.* The Oceanside Defendants consist of a Washington corporation and two individuals residing in Canada. (Docket Nos. 96 at 3 & 106 at 17.) A corporate defendant "shall be deemed to reside . . . in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question." 28 U.S.C.A. § 1391(c)(2). "[A] defendant not resident in the United States may be sued in any judicial district, and the joinder of such a defendant shall be disregarded in determining where the action may be brought with respect to other defendants." 28 U.S.C. § 1391(c)(3). Accordingly, for the purpose of venue for claims against the Oceanside Defendants, venue is proper in this district pursuant to 28 U.S.C.A. § 1391(b)(1).[3] The Oceanside Defendants' request that the claims against them be transferred or dismissed for improper venue will therefore be denied.

## **B. Counterfeiting**

The moving defendants argue that Claim III should be dismissed because MCM has failed to state a claim of counterfeiting against them. MCM responds that the defendants' argument is premised on an overly narrow reading of the Lanham Act's definition of counterfeiting and that the facts that they allege sufficiently establish that the defendants engaged in counterfeiting of the MCM marks.

---

[3] Some of the other individual defendants in this case are alleged to be U.S. residents of states other than Tennessee. (E.g., Docket No. 1 ¶ 115 (identifying Jia Ning Liu as residing in Martinez, Georgia).) It could be argued, therefore, that venue for the purpose of claims against those defendants cannot be premised on 28 U.S.C. § 1391(b)(1), and must instead fall to either 28 U.S.C. § 1391(b)(2) or (3). "[A] defect in venue," however, "can be raised only by the party to whom the defense applies. Accordingly, a defendant as to whom venue is proper may not assert the objection of one as to whom venue is not proper." 14D C. Wright & A. Miller *et al.*, Fed. Prac. & Proc. Juris. § 3807 (4th ed. 2017).

One of the stated purposes of the Lanham Act is "to prevent fraud and deception in . . . commerce by the use of reproductions, copies, counterfeits, or colorable imitations of registered marks." 15 U.S.C. § 1127. The Act also, however, identifies a number of broader purposes that go beyond the prohibition of outright counterfeiting. *Id.* A Lanham Act plaintiff is, therefore, not required to show that its defendant is a counterfeiter in order for that plaintiff to obtain some relief. *See* 15 U.S.C. § 1114 (setting forth remedies for innocent infringement). The Act does, however, provide for certain enhanced tools of recovery and enforcement against a defendant found to have used a "counterfeit mark," defined as "a counterfeit of a mark that is registered on the principal register in the United States Patent and Trademark Office for such goods or services sold, offered for sale, or distributed and that is in use, whether or not the person against whom relief is sought knew such mark was so registered." 15 U.S.C. § 1116(d)(1)(B)(i). MCM seeks to avail itself of these enhanced tools by way of its Claim III. The defendants argue that their use of the MCM Marks does not fall within the statutory definition of counterfeiting because the MCM Marks were not "registered . . . for such goods or services sold, offered for sale, or distributed" by the Hyco, Oceanside, or Miscellaneous Defendants. Specifically, they note that the MCM Marks were only registered for use with the distribution services related to grill replacement parts, but not for use with direct sales of grill parts or for use on grill parts as an indicator of the parts' manufacture.

The defendants identify a number of cases where courts have dismissed counterfeiting claims on the ground that the defendant's use of the plaintiff's mark was outside the scope of uses subject to the plaintiff's trademark registration. *See Timber Prods. Inspection, Inc. v. Coastal Container Corp.*, 827 F. Supp. 2d 819, 828 (W.D. Mich. 2011) (defendant's use of plaintiff's mark on corrugated boxes not counterfeiting where registration covered only building

materials); *Ford Motor Co. v. O.E. Wheel Distribs., LLC*, 868 F. Supp. 2d 1350, 1371 (M.D. Fla. 2012) (defendant's use of plaintiff's mark on wheels not counterfeiting where registration covered only auto parts and accessories, namely, interior insignia badges); *Coach, Inc. v. Asia Pac. Trading Co.*, 676 F. Supp. 2d 914, 923 (C.D. Cal. 2009) (defendant's use of plaintiff's mark on sunglasses not counterfeiting where registration covered only glasses cases); *Playboy Enters., Inc. v. Universal Tel-A-Talk, Inc.*, No. CIV. A. 96-CV-6961, 1998 WL 288423, at *6 (E.D. Pa. June 3, 1998) (defendant's use of plaintiff's mark with website not counterfeiting where registration covered only print magazine). The defendants argue that MCM's allegations are no different, because their uses of the MCM Marks were also outside the literal bounds of MCM's registrations.

In response, MCM relies in significant part on the Sixth Circuit's unpublished opinion in *Laukus v. Rio Brands, Inc.*, 391 F. App'x 416 (6th Cir. 2010), and urges the court to adopt that opinion's reasoning. The plaintiff in *Rio Brands* held a trademark registration for the mark AMERICAN PRIDE for use with "retail store services in the field of flags, flag poles, pennants and streamers." *Id.* at 418. The defendant was a manufacturer that began using the AMERICAN PRIDE mark on its flag holders, flag poles, and flags. *Id.* The district court granted the defendant summary judgment as to the counterfeiting claim on the ground that the defendant, as a manufacturer and not a retailer, was not using the mark with a good or service covered by the plaintiff's registration. The Sixth Circuit reversed, observing that, "[f]or purposes of a counterfeiting claim, the statute in no way distinguishes registered marks for services from registered marks for goods." *Id.* at 425. The court concluded that, because both parties used the same mark with the same type of products, the defendant's use amounted to counterfeiting,

despite the fact that it was a manufacturer and the plaintiff's registration was expressly targeted at retail services. *Id.*

At least with regard to the narrow circumstances at issue in this case, the reasoning of *Rio Brand*s is persuasive. The cases on which the defendants rely all involved the use of a registered mark on a particular good or type of good that was outside the scope of goods associated with the underlying trademark registrations. The goods allegedly sold by the defendants, on the other hand, are the precise type of goods at issue in MCM's registrations. The only complication is that MCM happened to register its marks as service marks associated with one particular step in the replacement parts' path to market—distribution—just as the plaintiff in *Rio Brands* happened to register its mark for retail. The definition of "counterfeit mark" in the Lanham Act, however, already makes clear that Congress intended to reach counterfeit goods at all stages of the supply chain, targeting counterfeit marks whether associated with goods "sold, offered for sale, *or* distributed." 15 U.S.C. § 1116(d)(1)(B)(i) (emphasis added). Failing to apply the anti-counterfeiting provisions here would therefore frustrate the purpose and intent of the Act.

Accordingly, the court concludes that, where a mark is registered for use with the retail or distribution of a discrete and defined type of goods, the fairest reading of the Lanham Act is that the mark is "registered . . . for such goods," as that phrase is used in the definition of "counterfeit mark" in the context of a civil anti-counterfeiting claim. A contrary interpretation would result in divergent remedies being available based on essentially clerical distinctions in the way the mark is registered and would prevent plainly counterfeit goods from being treated as such based on irrelevant supply-chain distinctions.

Finally, the Oceanside Defendants argue that the court should, in the alternative, dismiss the counterfeiting claims against them because their usage of the MCM Marks was *de minimis*.

Insofar as such a defense is available, it would be too fact-dependent to justify dismissal as a matter of law. Because MCM has pled plausible claims of counterfeiting against the moving defendants, the Hyco Defendants' motion to dismiss Count III will be denied, and the Oceanside and the Miscellaneous Defendants' motions will be denied as to their arguments specifically directed at Count III.

## C. Copyright Infringement

The Oceanside and Miscellaneous Defendants argue that the court should dismiss MCM's claims for copyright infringement because their alleged actions do not amount to infringement of any material protectable under federal copyright law. MCM responds that the defendants have mischaracterized its copyright claims and that it has pled various aspects of its materials that are subject to protection and various instances of infringement of those rights.

Federal copyright law prohibits the violation of the exclusive rights of a copyright owner, as are provided in 17 U.S.C. §§ 106–122. 17 U.S.C. § 501. Copyright owners have the exclusive rights to reproduce and distribute copyrighted works. 17 U.S.C. § 106. "The United States Constitution requires that," for a work to qualify for copyright protection, "the work [must] be 'original.'" *Tomaydo-Tomahhdo, LLC v. Vozary*, 629 F. App'x 658, 660 (6th Cir. 2015) (quoting U.S. Const. art. I, § 8, cl. 8; *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 346 (1991)). Pursuant to that originality requirement, a simple fact about the world cannot, in and of itself, be protected from dissemination merely because that fact was included in a material subject to copyright. *Id.* Nevertheless, "[w]hile facts cannot be copyrighted, *compilations* of facts generally can be." *Id.* (citing *Feist Publ'ns*, 499 U.S. at 344) (emphasis added). "However, the copyright protection extends only to the original aspect of the compilation; it does not protect the underlying unoriginal elements." *Id.* (citing *Feist Publ'ns*, 499 U.S. at 348).

MCM has identified three copyright registrations covering works to which it claims to be entitled to copyright protection. U.S. Copyright Registration No. TX 5-258-606 covers a work entitled "Illustrated Gas Grill Parts Search" created or completed in 1999. (Docket No. 1-8). U.S. Copyright Registration No. TX 7-268-508 covers a work entitled "Gas Grill Replacement Parts," formerly or alternately entitled "Illustrated Grill Parts Search," completed and published in 2010. (Docket No. 1-4.) MCM has provided a portion of "Gas Grill Replacement Parts," which appears to be a parts catalog incorporating both text and graphic elements, including numerous illustrations of grill replacement parts presented alongside their respective model numbers. (Docket No. 1-9.) Finally, U.S. Copyright Registration TX 7-925-681 covers a work entitled "Gas Grill Replacement Parts Catalog 28," formerly or alternately entitled "Illustrated Gas Grill Parts Search, Heavy Duty BBQ Replacement Parts," completed and published in 2014. (Docket No. 1-6.) MCM has provided a portion of "Gas Grill Replacement Parts Catalog 28," which also appears to be a parts catalog incorporating both text and graphic elements, including numerous illustrations of grill replacement parts presented alongside their respective model numbers. (Docket No. 1-10.)

As catalogs, MCM's copyrighted works convey a number of facts about the world that are not subject to copyright protection—namely, that the parts exist; that they look a certain way and consist of certain materials; and that they are available for sale from MCM. However, the catalogs also contain elements that appear at least likely to fall within the boundaries of original works protectable by copyright, such as the original illustrations of the parts themselves. MCM alleges that some defendants have directly copied these illustrations, which is sufficient to survive Rule 12(b)(6) as to those defendants. The Oceanside and Miscellaneous Defendants, however, argue that they, at the most, are alleged to have linked to listings including MCM's

model numbers. MCM argues that those model numbers are themselves entitled to copyright protection, while the Oceanside and Miscellaneous Defendants disagree.

"Classification schemes can in principle be creative enough to satisfy the originality requirement of copyright protection." *ATC Distribution Grp., Inc. v. Whatever It Takes Transmissions & Parts, Inc.*, 402 F.3d 700, 706 (6th Cir. 2005) (citing *Am. Dental Ass'n v. Delta Dental Plans Ass'n*, 126 F.3d 977, 979 (7th Cir. 1997)). The Sixth Circuit, however, has previously rejected a plaintiff's attempt to argue that its product numbering scheme was entitled to copyright protection:

> Even assuming, arguendo, that some strings of numbers used to designate an item or procedure could be sufficiently creative to merit copyright protection, the parts numbers at issue in the case before us do not evidence any such creativity. [The plaintiff's] allocation of numbers to parts was an essentially random process, serving only to provide a useful shorthand way of referring to each part. The only reason that a "sealing ring, pump slide" is allocated number 176 is the random ordering of sub-categories of parts, and the random ordering of parts within that sub-category. Were it not for a series of random orderings within each category field, a given part could be 47165 or 89386. As such, the particular numbers allocated to each part do not express any of the creative ideas that went into the classification scheme in any way that could be considered eligible for copyright protection.

*Id.* at 709. MCM has not identified any reason that its system of product numbering should be treated any differently from the system of product numbering at issue in *ATC Distribution Group*. The court accordingly will dismiss MCM's copyright infringement claims insofar as they are based solely on the use of MCM's model numbers for individual parts. As for whether MCM is entitled to copyright protection for other aspects of its catalogs, in particular any creative aspects of its fitment data and associated descriptions, there exist sufficient outstanding factual questions about that material's originality that the court will not dismiss those claims outright, just as it will not dismiss any claims based on the copying of original illustrations.

MCM has identified a number of allegedly infringing product listings that are, it claims, related to the movants, but it is not immediately clear from the Complaint which allegations of infringement are premised solely on the use of MCM model numbers and which are premised on the inclusion of additional allegedly infringing material. (*See, e.g.*, Docket No. 1-70.) At this stage in the proceedings, however, the court will not penalize MCM for failing to foresee which of its copyright theories would survive a motion to dismiss and which would not. Accordingly, the court will not yet wholly dismiss the copyright claims as to any particular defendants. Dismissal will accordingly be limited to the relevant subject matter, namely all copyright infringement claims premised solely on the use of model numbers.

## D. Preemption

The Oceanside and Miscellaneous Defendants argue next that MCM's Counts I through IV and VII through X should be dismissed as "preempted" by the Copyright Act. MCM counters that the relevant sources of law provide distinct rights distinguishable from those at issue in copyright law and that it has pled actionable claims under each distinct theory.

Counts I through III and VII through IX are federal statutory causes of action based on statutes other than the Copyright Act, namely  the Lanham Act and federal anti-racketeering laws. Accordingly, they are not subject to "preemption," as that term is used to refer to preemption of state law claims under the Constitution's Supremacy Clause, art. VI, cl. 2. The Copyright Act's preemption provision moreover expressly provides that "[n]othing in this title annuls or limits any rights or remedies under any other Federal statute." 17 U.S.C.A. § 301(d). There is therefore nothing inherently objectionable about the fact that MCM seeks remedies under both the Copyright Act and other federal laws. *See, e.g., Kano Labs., Inc. v. Clenair Mfg.,*

*Inc.*, No. 3-12-1209, 2013 WL 1775446, at *3 (M.D. Tenn. April 25, 2013) (Campbell, J.) (holding that Lanham Act claims were not preempted by the Copyright Act).

Nevertheless, the Supreme Court has "'caution[ed] against misuse or over-extension' of trademark and related protections into areas traditionally occupied by patent or copyright." *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 34 (2003) (quoting *TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23, 29 (2001)). The possibility of redundancy with copyright law is relevant, therefore, in cases where the court is called on to fix the outer boundaries of the Lanham Act. What MCM has alleged, however, is not a marginal case existing on the edge of what the Lanham Act is intended to protect. To the contrary, MCM has alleged a scheme through which the various defendants improperly traded on MCM's goodwill, which implicates the core concerns of trademark and unfair competition law. *See Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 773 (1992) ("[T]he protection of trademarks and trade dress . . . serves the . . . statutory purpose of preventing deception and unfair competition."). Nor is this a case where the plaintiff is attempting to use the Lanham Act as a subterfuge for smuggling in an otherwise deficient copyright claim. *See, e.g.*, *Nat'l Bus. Dev. Servs., Inc. v. Am. Credit Educ. & Consulting Inc.*, 299 F. App'x 509, 511 (6th Cir. 2008) (dismissing claim because "this type of claim is governed by copyright law, not the Lanham Act"). If anything, the central harms alleged in this case are closer to the concerns addressed by trademark law than to those addressed by copyright.

The defendants have also failed to identify any cases suggesting that MCM's copyright allegations preclude it from relying on the federal anti-racketeering statutes cited in Counts VII and VIII. Indeed, RICO expressly includes at least some instances of copyright infringement in

its definition of "racketeering activity." 18 U.S.C. § 1961(1). The defendants' preemption argument is therefore without merit with regard to MCM's federal claims.

Counts IV and X are claims arising out of Tennessee law and, therefore, can only survive if Congress did not preempt them. Under § 301(a) of the Copyright Act, a state law claim is preempted if: "(1) the work is within the scope of the 'subject matter of copyright,' as specified in 17 U.S.C. §§ 102, 103; and (2) the rights granted under state law are equivalent to any exclusive rights within the scope of federal copyright as set out in 17 U.S.C. § 106." *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting 17 U.S.C. § 301(a)). "Courts and commentators have described this preemption analysis as encompassing a 'subject matter requirement' and a 'general scope' or 'equivalency' requirement." *Id.* (citing *Nat'l Basketball Ass'n v. Motorola, Inc.*, 105 F.3d 841, 848 (2d Cir. 1997); 1 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 1.01[B][1]–[2], at 1-10 to 1-57 (1999)).

The subject matter requirement of § 301 is satisfied if a work fits within the general subject matter of §§ 102 and 103, regardless of whether it qualifies for copyright protection. *Stromback v. New Line Cinema*, 384 F.3d 283, 300 (6th Cir. 2004) (citations omitted). In *Wrench*, the Sixth Circuit, joining several other circuits, held that, for purposes of preemption, the scope of the Copyright Act's subject matter is broader than the scope of its protection. *Wrench*, 256 F.3d at 454–55.

To analyze equivalency, the court applies a "functional test" to determine whether the state law right at issue is equivalent to any of the exclusive rights under § 106. *Stromback*, 384 F.3d at 301 (citing *Data Gen. Corp. v. Grumman Sys. Support Corp.*, 36 F.3d 1147, 1164 (1st Cir. 1994)). Under § 301(a), even if a party's "state law claims concern works within the subject matter of copyright, such claims will only be preempted if they assert rights that are 'equivalent

to any of the exclusive rights within the general scope of copyright as specified by section 106[.]'" *Wrench*, 256 F. 3d at 455–56 (quoting 17 U.S.C. § 301(a)). "Equivalency exists if the right defined by state law may be abridged by an act which in and of itself would infringe one of the exclusive rights." *Id.* at 456. If, however, "an extra element is required instead of or in addition to the acts of reproduction, performance, distribution or display in order to constitute a state-created cause of action, there is no preemption, provided that the extra element changes the nature of the action so that it is qualitatively different from a copyright infringement claim." *Id.* (emphasis added) (citations omitted). The existence of an extra element precludes preemption only where the element changes the nature, rather than the scope, of the action. *Data Gen.*, 36 F.3d at 1164–65.

The subject matter and equivalency test may preclude certain theories of liability under MCM's state law claims, in particular any theory of liability premised on the assumption that copying of MCM's creative work in and of itself amounts to a violation of state law. *See Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 982 F.2d 693, 717 (2d Cir. 1992) (distinguishing state law claims "based solely upon copying" with those involving an extra element). As with its federal claims, however, MCM's state law claims are premised on a broader scheme based on the defendants' marketing activities, not simply their reproduction of creative work, and the harms alleged are beyond those targeted by copyright law. The fact that the improper use of an original work happens to be part of a course of conduct that amounts to either unfair competition or a violation of consumer protection statutes does not, in and of itself, prevent a plaintiff from relying on the causes of action that best correspond to the harms it has alleged. The court accordingly will not dismiss MCM's state law unfair competition and consumer protection claims as preempted.

## CONCLUSION

For the foregoing reasons, the Hyco Defendants' Motion to Dismiss Count III of Plaintiff's Complaint (Docket No. 87) will be denied, and the Oceanside and Miscellaneous Defendants' Motions to Dismiss (Docket Nos. 95, 119) will be granted in part and denied in part. MCM's claims for copyright infringement based solely on the defendants' use of its product model numbers will be dismissed.

The court will issue an appropriate order.

_____
ALETA A. TRAUGER
United States District Judge