**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| **MUSIC CITY METALS CO., INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 3:17-cv-766** |
| | ) | **Judge Aleta A. Trauger** |
| **JINGCHANG CAI** *et al.* | ) | |
| | ) | |
| **Defendants.** | ) | |

**<u>MEMORANDUM</u>**

Before the court is a request by Music City Metals Co., Inc. ("MCM") to convert the following temporary restraining orders ("TROs") into preliminary injunctions: the Modified Temporary Restraining Order against Shenzhen Hai Pai International Warehousing Services Ltd., HiPacking Inc., Hyco International Trading Company L.P., Jolyn Liu, Chugang Guan, Jia Ning Lui, Bloom International, Inc., Feng Bai, and Guangzhou Hongshuo Trading Co., Ltd. ("Hyco Defendants") (Docket No. 81); the Modified Temporary Restraining Order against Oceanside BBQ Parts Factory Inc., Baldev Sandhu, and Sukhwinder Bedi ("Oceanside Defendants") (Docket No. 93); and the Temporary Restraining Order against Jui Terng Pai A/K/A Lucas Pai ("Lucas Pai"), Debbie Pai, Hsu Hsin Yang, Hui Feng Yang, Broilchef Enterprise, Inc., Dragon Right Ltd., D&A Gourmet Co., Ltd., Lucas Innovation, Inc. (British Virgin Islands), Lucas Innovation, Inc. (Taiwan), Lucas BBQ Co., Ltd., Grill Town Enterprises, Inc., Bbqtek Enterprise, Inc., Suntech Parts & Services, Inc. (Canada), Suntech Parts & Services, Inc. (U.S.) and Kuo-Min Yeh, A/K/A Denny Yeh ("Lucas Pai Defendants") (Docket Nos. 9 & 137). For the reasons set forth herein, MCM's request will be granted in part and denied in part. The above-referenced TROs will be lifted and the court will enter a Consolidated Preliminary

1

Injunction governing the actions of certain defendants at issue in this Memorandum ("Covered Defendants").

## I. BACKGROUND AND PROCEDURAL HISTORY[1]

MCM is a Nashville-based seller of replacement parts for gas grills. Because MCM is not the manufacturer of the grills with which its parts are used, it conducts its own research to identify parts that are likely to need replacing in popular grill models and designs replacement parts that will meet those needs. MCM's business is not limited solely to replicating grill manufacturers' original parts. For example, some MCM replacement parts are designed to fulfill that part's designated purpose in multiple different grill models and, therefore, may include a combination of features appropriate to each relevant model—*e.g.*, screw holes in multiple different places depending on where the part will be affixed for each grill model. MCM has presented testimonial evidence establishing that the research and development process through which MCM designs its replacement parts is time- and resource-intensive, requiring MCM to continuously investigate manufacturers' grills to determine the specifications of the needed replacement parts and develop parts that will meet those needs.

Once MCM has developed a grill part that it wishes to make available for sale, it assigns that part a unique model number. MCM maintains that its system of model numbers is well known throughout the industry and identified, in the minds of the relevant buying public, with MCM itself. MCM compiles and publishes a product catalog that includes original photographs and/or illustrations of the parts alongside MCM product numbers and "fitment data" identifying the models of grill with which the particular parts can be used. MCM's catalog is available both

---

[1] The court held hearings related to the possible issuance of a preliminary injunction in this matter on June 2, 2017 (regarding the Hyco Defendants); June 22, 2017 (regarding the Oceanside Defendants); and October 18, 2017 (regarding the Lucas Pai Defendants). Because a formal transcript was ordered and entered onto the docket only with regard to the June 2, 2017 hearing (Docket Nos. 63 & 90), the court has relied on its notes and recollections with regard to the other hearings.

in print form and as an electronic database made available to licensed MCM distributors. MCM has obtained three federal copyright registrations for versions of its catalogs. (*See* Docket Nos. 1-4, -6, -8.) MCM has also obtained federal trademark registrations for the marks MCM and MUSIC CITY METALS ("MCM Marks"), each for use with "distributorship services in the field of gas grill parts; namely, valves, control knobs, heat indicators, ignitor components, lid handles, accessories, rotisserie housings, regulators, hoses, grill plumbing, natural gas grill posts, warming racks, gaslight parts and supplies, hot plates, burners and venturis, cooking grids, and rock grates/heat plates." (Docket Nos. 1-2, -3.)

MCM does not claim any rights to patent protection for its designs and, therefore, has no legal right to prevent its competitors from producing and selling similar, or even identical, parts. Accordingly, MCM is forced to turn to other potential advantages to maintain its market position, namely: (1) the accumulated goodwill and reputation from its many years in the industry; and (2) its ability to effectively match consumers with the parts they need, using tools like its part numbering system and the associated compiled fitment data. MCM claims to have dealt, at least in recent years, with persistent efforts by competitors to trade improperly on MCM's work and goodwill in order to further their own sales in the gas grill replacement parts market, in particular through e-commerce platforms. In order to combat this allegedly unlawful marketing by its competitors, MCM has initiated and received injunctive relief in a number of actions in this court.

On April 27, 2017, MCM filed its Verified Complaint in this case, naming over sixty defendants. (Docket No. 1.) Although the Complaint frequently discusses the defendants in the aggregate, MCM has not adduced any evidence to suggest that the numerous defendants are part of any unitary enterprise or conspiracy. To the contrary, the evidence currently presented

suggests that this case involves numerous distinct clusters of affiliated defendants who may be in competition with each other just as surely as they are in competition with MCM.

Counts I, II, and III of the Complaint plead, respectively, trademark infringement, unfair competition, and counterfeiting under the Lanham Act against all defendants. (*Id.* ¶¶ 283–300.) Count IV pleads a claim under Tennessee law of unfair competition against all defendants. (*Id.* ¶¶ 301–03.) Count V is a breach of contract claim against four of the Lucas Pai Defendants arising out of a December 2, 2014 settlement agreement. (*Id.* ¶¶ 304–08.) Count VI pleads a claim for copyright infringement against all defendants. (*Id.* ¶¶ 309–17.) Counts VII and VIII are claims under the civil provisions of the Racketeer Influenced and Corrupt Organizations Act ("RICO") against all defendants. (*Id.* ¶¶ 318–32.) Count IX pleads a claim for false advertising under the Lanham Act against select defendants, related to those defendants' allegedly improper use of the phrase "FDA Approved." (*Id.* ¶¶ 333–41.) Count X is a claim under the Tennessee Consumer Protection Act against the same defendants arising out of the "FDA Approved" allegations. (*Id.* ¶¶ 342–46.) On May 5, 2017, the court issued an Order granting a TRO as to all defendants, ordering the defendants to show cause as to why MCM is not entitled to a preliminary injunction, and setting a hearing on the preliminary injunction. (Docket No. 9.)

The original hearing date was eventually superseded by a number of separate dates reflecting the different statuses and concerns of the various groups of defendants. The court held a hearing regarding a potential preliminary injunction with regard to the Hyco Defendants on June 2, 2017. The court reserved ruling on that matter and left the TRO in effect, with modifications. (Docket Nos. 58, 81.) On June 22, 2017 the court held a hearing regarding a potential preliminary injunction against the Oceanside Defendants. Following that hearing, MCM and the Oceanside Defendants submitted, and the court approved, a modified TRO

reserving judgment on the possibility of a preliminary injunction. (Docket Nos. 91–93.) On October 18, 2017, the court held a hearing regarding a potential preliminary injunction against the Lucas Pai Defendants, after which the court extended the TRO. (Docket No. 128 & 137.) The court ordered supplemental briefing regarding the preliminary injunction request from the Hyco and Lucas Pai Defendants, which the parties provided. (Docket Nos. 142, 158, 159, 176.)

## II. LEGAL STANDARD

The Sixth Circuit has held that the district court must balance four factors when considering a motion for preliminary injunction under Federal Rule of Civil Procedure 65: (1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether the issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by the issuance of the injunction. *City of Pontiac Retired Emps. Ass'n v. Schimmel*, 751 F.3d 427, 430 (6th Cir. 2014) (citing *PACCAR Inc. v. TeleScan Techs., LLC*, 319 F.3d 243, 249 (6th Cir. 2003)).

## III. CONCLUSIONS OF LAW REGARDING THE BASIS OF MCM'S CLAIMS

MCM has asserted an array of intellectual property rights related to its sale and marketing of grill replacement parts. Because MCM's likelihood of success against individual defendants will depend on the scope of the rights asserted, the court will first consider MCM's general theories of liability and then turn to its consideration of the various named defendants.

### A. Likelihood of Success Regarding MCM's Rights Under Copyright Law

MCM first asserts that the defendants have violated its copyrights, in particular with regard to its compiled fitment data.[2] Copyright owners have the exclusive rights to reproduce

_____

[2] Although MCM has alleged that some defendants have used MCM's copyright-protected photos and illustrations in their listings, it addressed those allegations minimally, if at all, in its supplemental

5

and distribute copyrighted works. 17 U.S.C. § 106. "The United States Constitution requires that," for a work to qualify for copyright protection, "the work [must] be 'original.'" *Tomaydo-Tomahhdo, LLC v. Vozary*, 629 F. App'x 658, 660 (6th Cir. 2015) (citing U.S. Const. art. I, § 8, cl. 8; *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 346 (1991)). Pursuant to that originality requirement, a simple fact about the world cannot, in and of itself, be protected from dissemination merely because that fact was included in a material subject to copyright. *Id.* Nevertheless, "[w]hile facts cannot be copyrighted, *compilations* of facts generally can be." *Id.* (citing *Feist Publ'ns*, 499 U.S. at 344) (emphasis added). "However, the copyright protection extends only to the original aspect of the compilation; it does not protect the underlying unoriginal elements." *Id.* (citing *Feist Publ'ns*, 499 U.S. at 348).

MCM's copyright-registered catalogs convey a number of facts that are not subject to copyright protection—for example, that the parts exist; that they look a certain way and consist of certain materials; and that they are available for sale from MCM. Similarly, each individual piece of fitment data is too inherently factual to be entitled to copyright protection in its own right. That a particular part, if placed in a certain grill, will perform a certain function is simply a physical fact that no party has a right to prevent another from repeating under copyright law. This court, moreover, has already held that, under the law of the Sixth Circuit, the product numbering system that MCM uses in the catalogs is not, in and of itself, entitled to copyright protection. (Docket No. 124 at 18.) As the Sixth Circuit held in *ATC Distribution Group, Inc. v. Whatever It Takes Transmissions & Parts, Inc.*, a system that methodically assigns numbers to

---

briefing. Moreover, none of the arguments regarding irreparable harm that MCM has advanced plausibly apply to alleged infringement of photos and illustrations, because the harms that MCM has alleged all stem from alleged competitive advantages attributable to the defendants' use of MCM's marks, product numbers, and fitment data. Accordingly, the court will not address MCM's claims related to copyrights in illustrations or photos and will grant no preliminary injunctive relief with regard to those allegations against the Hyco, Lucas Pai, or Oceanside Defendants.

new products as they become available is not, in isolation, sufficiently creative or expressive for the numbers to warrant protection under federal copyright law. 402 F.3d 700, 709 (6th Cir. 2005)

MCM's copyright claims, however, are not based solely on the defendants' use of product numbers alone or their repeating of individual pieces of fitment data. Rather, MCM claims copyright protection in the compilation and coordination of fitment data, product descriptions, and product numbers, as embodied by the MCM catalogs. "To copyright a compilation, the statute imposes three requirements: '(1) collection and assembly of pre-existing material, facts or data; (2) the selection, coordination or arrangement of those materials; and (3) the creation, by virtue of the particular selection, coordination or arrangement, of an 'original' work of authorship.'" *Sem-Torq, Inc. v. K Mart Corp.*, 936 F.2d 851, 854 (6th Cir. 1991) (quoting *Feist*, 499 U.S. at 357). "Not every selection, coordination, or arrangement will pass muster" and entitle its creator to copyright protection. *Feist*, 499 U.S. at 358. Nevertheless, the originality requirement for obtaining at least some level of protection is "not particularly stringent"; the Supreme Court has explained that "the vast majority of compilations will pass this test" as long as they "display some minimal level of creativity." *Id.* at 358–59. With that in mind, the court has little trouble concluding that MCM is likely to succeed in establishing that it is entitled to some level of protection with regard to its compilation and coordination of product details, product descriptions, product numbering, and fitment data, as represented in its catalogs.[3]

While the bar for establishing some protection in a compilation is low, however, establishing actual infringement by a party that has not copied one's compilation in its entirety is more difficult. "[C]opyright is not a tool by which a compilation author may keep others from using the facts or data he or she has collected." *Id.* at 359. Accordingly, "the copyright in a

---

[3] Moreover, MCM's registrations of its catalogs constitute "prima facie evidence of the validity of [its] copyright[s]." 17 U.S.C. § 410 (c).

factual compilation is thin." *Id.* at 349. The rights holder has no authority to prevent any third party from relaying—or even from outright copying—the underlying facts, as long as the third party refrains from "copying of constituent elements of the work that are original." *Id.* at 361 (citing *Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 548 (1985)). Elements of a compilation that are original may include the author's "choos[ing] which facts to include, in what order to place them, and how to arrange the collected data so that they may be used effectively by readers." *Id.* at 338.

The examples of the defendants' allegedly infringing conduct identified by MCM involve discrete listings of particular grill replacement parts, not large-scale replication of MCM's lengthy compilations as found in its catalogs. The court, accordingly, cannot conclude that MCM is likely to prevail on any copyright infringement claims based on the arrangement of information in the catalogs as a whole. MCM has suggested that particular defendants' multiple listings, taken in the aggregate, could be viewed as the cumulative equivalent of copying considerable portions of the catalog. It has not, however, identified any examples of cases where a court has accepted such a claim, and, insofar as such a theory is even viable, it would require a substantial factual record of listings that, taken together, would not merely convey information from the catalogs but mirror its arrangement. MCM has, therefore, not demonstrated a likelihood of success on a theory that would equate defendants' cumulative listings with large-scale copying of its catalogs.

Nor has MCM identified any particular aspect of the arrangement of the fitment data itself, as conveyed by the defendants, that would qualify as creative. To the contrary, the listings that MCM has offered as examples of infringement mostly present simple, matter-of-fact lists of grill models with which each relevant part would work. There is nothing creative about how the

information is presented, nor has MCM identified anything relevantly creative about the way that the same information was presented when MCM first compiled it. MCM has instead repeatedly retreated to reminding the court of all the labor it has put into its product development and marketing processes. That type of "sweat of the brow" argument, however, has been expressly rejected as a basis for copyright protection by the Supreme Court. *Feist Publ'ns*, 499 U.S. at 359–60.

MCM acknowledges that facts themselves are not entitled to copyright protection, but it has argued that the only consequence of that rule is that the defendants would be free to relay the same fitment information if—and only if—the defendants independently discovered that fitment information themselves, through their own independent research and development process. The Supreme Court, however, has expressly disclaimed any such rule, explaining that facts—even those in a copyright-protected compilation—are "free for the taking" and "may be . . . restated or reshuffled by second comers, even if the author was the first to discover the facts." *Feist*, 499 U.S. at 349 (quoting Jane C. Ginsburg, *Creation and Commercial Value: Copyright Protection of Works of Information*, 90 Colum. L. Rev. 1865, 1868 (1990)). The consequence of the premise that "[n]o author may copyright facts or ideas" is that facts, like ideas, "are free to the world" and "can be appropriated by another with impunity." *Stromback v. New Line Cinema*, 384 F.3d 283, 296 (6th Cir. 2004) (quoting *Feist*, 499 U.S. at 350; *Taylor v. Metro-Goldwyn-Mayer Studios*, 115 F. Supp. 156, 157 (S.D. Cal. 1953)). Copying of facts from a copyright-protected compilation is wholly lawful as long as one does not copy "those aspects of the work—termed 'expression'—that display the stamp of the author's originality." *Id.* (quoting *Feist*, 499 U.S. at 350).

Based on the evidence currently presented, MCM has not shown a likelihood of success in establishing that the portions of its fitment data used by the defendants—specifically, the brief, part-specific lists of compatible grill models—include any creative expression that would be entitled to copyright protection. Specifically, insofar as the defendants' identified listings and advertisements include fitment data that can also be found in MCM's catalogs or MCM's database, it is not clear how the defendants' presentations of that data incorporate any creative elements of either the catalogs or any database. The defendants simply list grill models, grouped by manufacturer, with which a part will work. MCM has not identified what, about such a list, represents the use of a protectable element. There is nothing creative about grouping models by manufacturer; that is simply arranging the information in the most naturally intelligible form, akin to listing entries in a phone book alphabetically—which the Supreme Court has held is not entitled to copyright protection. *See Feist*, 499 U.S. at 363 ("[T]here is nothing remotely creative about arranging names alphabetically in a white pages directory.") Nor has MCM identified anything creative and protectable about the particular order in which the models are listed within each manufacturer grouping. With regard to the fitment data, it is apparent that the defendants' listings simply recite factual information in its most natural, simple, and straightforward form. Because no creative elements were copied, it does not matter whether the defendants generated the fitment data themselves or whether they are simply restating information first published by MCM. The court, accordingly, concludes that MCM is unlikely to succeed on its copyright claims related to fitment data.

## B. Likelihood of Success Regarding MCM's Trademark Rights

Under the Lanham Act, trademark infringement occurs when "any person . . . without the consent of the registrant[,] use[s] in commerce any reproduction, counterfeit, copy, or colorable

imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1). The Sixth Circuit has developed an eight-factor test to evaluate, based on the circumstances of each case, whether confusion is likely. *Frisch's Rest., Inc. v. Elby's Big Boy of Steubenville, Inc.*, 670 F.2d 642, 648 (6th Cir. 1982).

It is undisputed that MCM has protectable trademark rights in the MCM and MUSIC CITY METALS marks, and MCM has, indeed, identified a number of listings that it attributes to particular defendants and in which "MCM" appears. As MCM concedes, however, simply mentioning another company's brand name, even in a commercial setting, does not necessarily amount to trademark infringement. MCM's own business model, in fact, is dependent on its ability to use the company and product names of grill manufacturers in order to match purchasers with the parts they need. The Lanham Act poses no obstacle to such uses, as long as care is taken to avoid causing confusion with regard to how the various entities' names are being used. "[T]rademark infringement and false designation of origin laws do not apply" if the party using another entity's name is using that name "in a 'non-trademark' way." *Interactive Prods. Corp. v. a2z Mobile Office Sols., Inc.*, 326 F.3d 687, 695 (6th Cir. 2003) (citing *New Kids on the Block v. News Am. Publ'g, Inc.*, 971 F.2d 302, 307 (9th Cir. 1992)). A non-trademark use of a company or product name is a use that "does not identify the source of [the] product" being sold. *Id.* The question of whether a particular use of a product or company name constitutes a "'trademark use' . . . focuses on 'whether a consumer is likely to notice [the plaintiff's trademark] . . . and then think that the [defendant's product] may be produced by the same company[.]'" *Oaklawn Jockey Club, Inc. v. Ky. Downs, LLC*, 687 F. App'x 429, 432 (6th Cir. 2017) (quoting *Interactive*

*Prods.*, 326 F.3d at 696). If the court determines that the defendant's use of the plaintiff's name is a non-trademark use, there is no need to proceed to the eight-factor likelihood-of-confusion inquiry. *Id.*

For example, in *Oaklawn Jockey Club, Inc. v. Kentucky Downs, LLC*, the defendant had developed a software platform that used anonymized data of historical horseraces to enable contemporary gambling. After a bet was placed via the platform, the details of the race, including the name of the track on which it was run, would be revealed via a computer-generated "video" replay. The owner of the trademark rights in several relevant track names sued the software developer for trademark infringement, but the Sixth Circuit held that the mere display of the track names in the defendant's software was a non-trademark use, because the manner in which the names were presented "would not confuse consumers into believing the videos were provided by" the trademark owner. *Id.* at 433.

By the same principle, when MCM, a company that clearly markets itself as providing replacement parts for other companies' grills, uses those companies' product names to explain which grills its products fit, there is no trademark infringement, as long as the names are presented in a way that would not confuse the consumer regarding the provenance of the replacement parts. The same rule applies when it is MCM whose parts are being replaced. After all, there is no rule against replacing a grill part more than once. A consumer might purchase a grill, later replace one of the grill's parts with an MCM part, and then, later still, replace the MCM part with an equivalent sold by one of MCM's competitors. Just as MCM is well within its rights to note that one of its parts can replace a particular part in a grill manufactured by Nexgrill or Charmglow, another manufacturer is free to note that its part can replace a particular part that was bought through MCM. Indeed, counsel for MCM has admitted, before the court, that a

defendant's identifying its part as comparable to a particular MCM part is "clearly allowed under the law." (Docket No. 90 (Tr. of Hearing, 6/2/17) at 20.)

The TROs currently in place broadly prohibit the use of MCM's marks in the defendants' e-commerce listings. (*E.g.*, Docket No. 81 at 2–3.) Upon review, the court concludes that MCM has not established a likelihood of success with regard to so broad an interpretation of its rights. Although MCM has established a likelihood of success with regard to particular listings, discussed in more detail below, that use the MCM mark in a manner that reasonably could be read as suggesting the product's origins, MCM has no right to forbid its competitors from engaging in the same type of non-trademark, functionality-identifying uses in which MCM itself engages freely. The court, accordingly, finds a likelihood of success only with regard to the narrower class of impermissible uses defined below.

The TROs also include, in their definition of MCM's protected trademarks, its full range of product numbers. (*E.g.*, Docket No. 81 at 2.) This aspect of the TROs, as well, was overbroad, because MCM has not established a likelihood of success with regard to whether the individual product numbers themselves are entitled to trademark protection. It is axiomatic that, in order to seek the protections of trademark law, one must have a protectable trademark. *See Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763 767–68 (1992). In order to be a valid, protectable trademark, a mark must be capable of signaling the origin of a good or service. In order to signal the origin of a good or service, the mark "must be distinctive." *Papa Ads, LLC v. Gatehouse Media, Inc.*, 485 F. App'x 53, 55 (6th Cir. 2012) (citing *Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.*, 280 F.3d 619, 635 (6th Cir. 2002)). As the Supreme Court has noted, "[m]arks are often classified in categories of generally increasing distinctiveness; following the classic formulation set out by Judge Friendly, they may be (1) generic; (2) descriptive; (3)

suggestive; (4) arbitrary; or (5) fanciful." *Two Pesos*, 505 U.S. at 768 (citing *Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4, 9 (2nd Cir. 1976)). The latter three categories are considered inherently distinctive and are entitled to protection without showing any additional "acquired distinctiveness" arising out of the relevant mark's real-world use. *Id.* Descriptive marks, although not inherently distinctive, may be registered if they have acquired a "secondary meaning" in commerce. *Id.* at 769. Secondary meaning occurs where "it can be determined that the attitude of the consuming public toward the mark denotes a single thing coming from a single source." *Burke-Parsons-Bowlby Corp. v. Appalachian Log Homes, Inc.*, 871 F.2d 590, 596 (6th Cir. 1989) (internal quotation marks and citation omitted). Thus, a descriptive mark has acquired secondary meaning when it has "becom[e] distinctive of the applicant's goods." *Champions Golf Club, Inc. v. The Champions Golf Club, Inc.*, 78 F.3d 1111, 1117 (6th Cir. 1996) (quoting *Induct-O-Matic Corp. v. Inductotherm Corp.*, 747 F.2d 358, 362 (6th Cir. 1984) (internal quotation marks and citation omitted)).

The Sixth Circuit addressed the application of the distinctiveness requirement to product numbers in its unpublished decision in *Tenneco Automotive Operating Co. v. Kingdom Auto Parts*, 410 F. App'x 841, 847 (6th Cir. 2010). The *Tenneco* court affirmed a holding that a manufacturer's product numbers were descriptive and, therefore, could only be entitled to trademark protection if they had acquired distinctiveness. *Id.* In its briefing, MCM does not argue that *Tenneco* was wrongly decided but, instead, argues that its product numbers have acquired secondary meaning because they "are known to MCM's distributors and consumers as identifiers of the source of those parts." (Docket No. 5 at 14.) MCM, however, has not provided evidence sufficient for the court to conclude that MCM can establish acquired distinctiveness as to any of its specific, individual product numbers—let alone *all* of the over one thousand product

numbers at issue here. At most, MCM has identified instances where a few customers became confused about the maker of certain parts they ordered. Those examples, without more, are not enough to establish secondary meaning with the buying public as a whole. Moreover, the examples would, at most, establish secondary meaning as to those particular numbers, not the hundreds of numbers to which MCM claims it has trademark rights. MCM's likelihood of success regarding trademark infringement, therefore, extends only to its MCM and MUSIC CITY METALS marks, not its product numbers.

## C. Likelihood of Success Regarding MCM's Rights Under the Law of Unfair Competition Law

Finally, MCM argues that, if all other sources of its rights fail, it still has a strong likelihood of success with regard to its state and federal unfair competition claims. MCM argues that the law of unfair competition exists, in part, to capture unique situations, like this, that fall outside of the purview of the ordinary tools for safeguarding competitors' intellectual property but that still implicate core issues of fairness in competition. The cases that MCM has cited for this theory, however, fall short of establishing a strong likelihood of success on the merits. While unfair competition law does prohibit a broader range of deceptive behavior in commerce than trademark infringement alone, it is still the case that, in most matters, "likelihood of confusion is the essence of an unfair competition claim."[4] *Wynn Oil Co. v. Am. Way Serv. Corp.*, 943 F.2d 595, 604 (6th Cir. 1991). Therefore, the issues that impose limitations on the scope of MCM's

---

[4] Indeed, MCM's own descriptions of its unfair competition claims make clear that it is relying on the same general theory of consumer confusion underlying its trademark infringement claims. (*See* Docket No. 1 ¶¶ 292 ("The Defendants' use of MCM's trademarks, MCM's copyrighted works, MCM's unique model numbers, and other deceptive content in connection with Defendants' advertisements and sales of grill parts are intended to deceive customers into purchasing the Defendants' products under the misguided belief that Defendants are affiliated with MCM, which is false."), 302 ("The Defendants have acted with intent to deceive the public as to the source of their goods and services, and the public has, in fact, been confused or deceived as to the true source of the Defendants' services and the rights and authority of their organizations.").

likely success regarding trademark infringement—specifically, (1) the defendants' legitimate grounds for engaging in non-trademark use of MCM's marks and (2) the fact that MCM's product numbers arguably refer only to the parts, not the parts' source—also likely stand in the way of MCM's recovery under an unfair competition theory. The modern cases that MCM has cited in support of its theory offer, at best, broad general formulations of the law that might implicate this case but do not go very far toward resolving it, particularly with regard to the Lanham Act and Tennessee law—the only sources of law actually at issue. *See, e.g.*, *Nat'l Basketball Ass'n v. Motorola, Inc.*, 105 F.3d 841, 850 (2d Cir. 1997) ("[S]tate law should have the flexibility to afford a remedy (under traditional principles of equity) against a consistent pattern of unauthorized appropriation by a competitor of the facts . . . ." (quoting H.R. No. 94-1476 at 132, reprinted in 1976 U.S.C.C.A.N. at 5748)); *Advance Watch Co. v. Kemper Nat. Ins. Co.*, 99 F.3d 795, 802 (6th Cir. 1996) (discussing "misappropriation of advertising ideas or style of doing business" in the context of that term's use in an insurance policy); *U.S. Golf Ass'n v. St. Andrews Sys., Data-Max, Inc.*, 749 F.2d 1028, 1035 (3d Cir. 1984) (discussing application of unfair competition law "to a variety of situations in which the courts have sensed that one party was dealing 'unfairly' with another, but which were not covered by the three established statutory systems protecting intellectual property: copyright, patent, and trademark/deception as to origin"); *A & M Records, Inc. v. M.V.C. Distrib. Corp.*, 574 F.2d 312, 314 (6th Cir. 1978) (rejecting argument that the Copyright Act wholly preempts law of unfair competition based on misappropriation of facts).

"At the preliminary injunction stage, 'a plaintiff must show more than a mere possibility of success.'" *Ne. Ohio Coal. for Homeless v. Husted*, 696 F.3d 580, 591 (6th Cir. 2012) (quoting *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 543 (6th Cir.

2007)). While MCM has established some possibility that it will ultimately prevail on an unfair competition claim, it has not, the court concludes, produced sufficient evidence or legal authority to establish the sufficient likelihood of success necessary to support a preliminary injunction. With regard to the particular defendants here, MCM has produced merely a handful of examples of listings using product numbers—for which MCM has not established distinctiveness—and fitment data—which is wholly factual and unprotectable by copyright. Insofar as state or federal law prohibits some aspect of the defendants' business practices, the court lacks a sufficient record on which to draw such a conclusion or to identify the particular practice that should be enjoined.

## IV. FINDINGS OF FACT REGARDING INDIVIDUAL DEFENDANTS

With the above principles in mind, the court will now turn to whether and to what extent MCM has presented evidence of activities, by each of the individual defendants against which it seeks a preliminary injunction, that run afoul of the rights pursuant to which MCM has established a likelihood of success as a legal matter.

### A. Hyco Defendants

As an initial matter, the Hyco Defendants argue, in their supplemental briefing, that MCM has identified no examples tying their alleged infringing activities to Jia Ning Liu or Bloom International, Inc., despite having been ordered, by the court, to provide specific examples of infringing activity with regard to the defendants. (Docket No. 176 at 7, 12; *see* Docket No. 168 at 1.) MCM has offered no evidence to refute the Hyco Defendants' position in that regard. The court accordingly finds no likelihood of success with regard to those parties. The court construes the Hyco Defendants as conceding, by implication, that the remaining people and

entities identified as Hyco Defendants are, or at least historically have been, involved, in at least some regard, with the activities attributed to them.

MCM has identified some Hyco listings in which "MCM" or "Mcm" appears in the listing title. (Docket No. 1-62 at 7, 17, 71.) Those listings, however, use MCM's name in a manner suggestive of non-trademark use. For example, one listing uses the header "Hyco Universal BBQ Gas Grill Heat Plate Porcelain Steel Heat Shield for Mcm, Costco Kirland, Glen Canyon, Jenn-air, Nexgrill, Sterling Forge, Lowes, hy91231, NGCHP2 (4-pack)." (*Id.* at 7.) The obvious and natural reading of such a header is that the listing involves a part made by Hyco and that "Mcm" is merely included in a list of manufacturers for whose parts Hyco's part can be used as a substitute. MCM, however, takes issue with two aspects of Hyco's use of "Mcm" in that and comparable advertisements: (1) the fact that "Mcm" was included in the title, rather than the body of the advertisement or elsewhere; and (2) the fact that MCM was listed among grill manufacturers, when MCM is not, in fact, a grill manufacturer, but rather merely a manufacturer of parts.

Insofar as MCM is arguing that any use of "MCM" in the title of an Amazon listing is inherently a trademark use, the court sees no authority or basis for such a black-and-white rule, particularly considering that the titles at issue here are, themselves, often quite lengthy and plainly include a great deal of descriptive content about the function of the product being sold. If "MCM" or "Mcm" is merely included in a long list of several entities whose products are appropriate for use with the part, the listing no more suggests that MCM made the part being sold than it suggests that those other companies did. While placement is certainly a factor that can be considered with regard to whether a use is infringing, a facially non-trademark use does not automatically become a trademark use simply because it appears in a listing's title. MCM's

likelihood of success, therefore, depends on the specific content of the defendants' use of "Mcm."

MCM is correct that including it on a list of grill manufacturers is confusing—although it is less clear whether that confusion is of the type that matters under trademark law. A listing that merely leads a consumer to mistakenly believe that MCM manufactures grills—but that does not lead the consumer to believe that the product being sold is an MCM product—may run afoul of some body of law, but it is not clear to the court that the allegation at issue is one of trademark infringement. Moreover, the court does not see what harm, if any, MCM would suffer from customers' being led to incorrectly believe that MCM manufactures grills. Because MCM has produced evidence only of Hyco listings that use "MCM" in a non-trademark sense, the court will not grant a preliminary injunction against the Hyco Defendants and will vacate the TRO currently in force.

## B. Lucas Pai Defendants[5]

As with the Hyco Defendants, there is some dispute over whether all of the parties that MCM has identified are actually involved in the allegedly infringing listings that MCM has attributed to the Lucas Pai Defendants. MCM has produced Amazon records linking Jui Terng Pai a/k/a Lucas Pai, Kuo-Min Yeh a/k/a Denny Yeh, Hsu Hsin Yang, Hui Feng Yang, BBQTek Enterprises, Inc., and Suntech Parts and Services, Inc. (Canada) to bank accounts associated with an Amazon seller operating under the name Heavy Duty BBQ Parts ("Heavy Duty BBQ"),

---

[5] Although Count V is a claim for breach of contract against certain Lucas Pai Defendants, and MCM discussed that claim, among others, at the preliminary injunction hearing devoted to the Lucas Pai Defendants, MCM has not, in either its initial brief or its later supplemental briefing, set forth any argument that it is entitled to preliminary injunctive relief arising out of breach of contract. (Docket Nos. 5 & 142.) Accordingly, the court will consider only MCM's right to preliminary relief with regard to copyright infringement, trademark infringement, and unfair competition.

pursuant to the Amazon ID of A1O84MJ7BC5OBF. (Docket No. 145-1 at 2.)[6] Lucas Pai has

admitted that he is an officer of Grill Town Enterprises, Inc., and that he organized BBQTek

Enterprises, Inc., while Denny Yeh has admitted that he is the owner of Suntech Parts and

Services, Inc. (Canada). (Docket No. 85 ¶¶ 52, 58, 61.) The Lucas Pai Defendants have not

identified a plausible basis for disputing that MCM will be likely to show that those parties are,

at least historically, responsible, in whole or part, for listings under the Heavy Duty BBQ name.

MCM, however, has not identified evidence tying several Lucas Pai Defendants—namely

Debbie Pai, Dragon Right Ltd., D&A Gourmet Co., Ltd., Lucas Innovation, Inc. (British Virgin

Islands), Lucas Innovation, Inc. (Taiwan), Lucas Bbq Co., Ltd., and Suntech Parts & Services,

Inc. (U.S.)—to any infringing activity. The court, accordingly, finds no likelihood of success

with regard to those defendants and will focus only on the Lucas Pai Defendants linked to Heavy

Duty.

MCM has identified at least one listing, apparently by Heavy Duty[7], that plainly violates

the trademark rights that, the court has concluded, MCM is likely to succeed in establishing its

right to assert. Specifically, MCM has identified a listing, printed on July 6, 2016, with a title

including the MCM mark in a manner that, the court finds, would be perceived by a reasonable

consumer as indicating the part's source. (Docket No. 1-63 at 20.) Another listing identified as

coming from Suntech Parts & Services has similar issues. (Docket No. 1-68 at 236.) Unlike the

---

[6] During the preliminary injunction hearing related to the Lucas Pai Defendants, those defendants initially
objected to MCM's proffered Amazon records as not authenticated. Following a recess, however, counsel
for the Lucas Pai Defendants agreed that the documents, including the Amazon bank account/credit card
records, were authentic, and the data was admitted as an exhibit. (*See also* Docket No. 158 at 5
(conceding that the data relied on by MCM is "Amazon data").)

[7] The Lucas Pai Defendants suggest that this example involves only bbqGrillParts, an entity associated
with the Oceanside Defendants. The listing, though, only states that it is "[s]hipped from and sold by
bbqGrillParts." (Docket No. 1-63 at 20.) "Heavy Duty Parts Factory" is listed more prominently, above
the title, as what the court construes to be the primary vendor responsible for the advertisement. (*Id.*)

Hyco listings discussed above, there is nothing about the context of these listings' use of "MCM" that would suggest that the defendants are making a permissible, non-trademark use of MCM's mark.

The Lucas Pai Defendants respond to MCM's examples by arguing that the information that MCM has provided is potentially stale and lacks sufficient context to support a final determination of liability. In particular, the historical bank account and credit card information on file with Amazon does not necessarily establish ongoing involvement with the allegedly infringing sellers, nor does it offer much detail in terms of what the individual parties' respective roles were. The listings themselves, moreover, do not necessarily represent ongoing infringing activities, because they are merely historical snapshots of what was, at the time, available.

MCM, however, is not required to establish every detail of its claims unassailably in order to be entitled to a preliminary injunction. At this stage, it is seeking merely to establish a strong likelihood of success. The parties agree that at least some of the Lucas Pai Defendants have been involved in the sale of grill parts comparable to MCM's, and MCM has provided historical evidence that—although not as current or as well-explained as it could be—ties some, though not all, of the Luca Pai Defendants to listings that plainly run afoul of rights that MCM has shown that it is likely to establish. The court finds that, as to the specific Lucas Pai Defendants on which MCM has adduced evidence, MCM has shown the necessary likelihood of success to support a preliminary injunction, if the other factors support doing so.

## C. Oceanside Defendants

Sukhwinder Bedi admits that he is the sole owner and operator of Oceanside BBQ Parts Factory, Inc., ("Oceanside") and that the company sells grill replacement parts under the names "bbqGrillParts" and "grillpartszone" on Amazon. (Docket No. 96-1 ¶¶ 7, 10, 14.) Oceanside also

sells products through its own websites and eBay. (Docket No. 67-1 ¶¶ 16, 18.) Bedi denies, however, that Baldev Sandhu is an "active agent[] of Oceanside." (*Id.* ¶ 21.) At their hearing, however, counsel for the Oceanside Defendants conceded that Sandhu is listed on at least one Oceanside Amazon account.[8]

At the hearing devoted to the Oceanside Defendants, MCM introduced documents that MCM purported to have received from Amazon in prior litigation showing historical sales under the bbqGrillParts and grillpartszone names. Although the documents did not reveal what, exactly, the consumer would have seen when accessing the particular listings via Amazon, they did include what appeared to be truncated versions of the titles associated with the listings. The bbqGrillParts listings included a number of titles that used "MCM" in a manner that, the court concludes, would likely give rise to a likelihood of confusion with regard to whether the part being sold was an MCM part. Specifically, the listings do not include "MCM" as part of a list of grill or part manufacturers. Rather, they include "MCM" before such a list, next to a product number. For example, a sale of June 12, 2016, has the following apparently truncated title:

> C, Genesis 1000-3500, Spirit 700 Gas Grill Models, Set
>
> 52932 MCM - Centro, Charbroil, Front Avenue, Fiesta, Kenmore, Kirkland, Kmart, Master Chef, and

The nature of the document that MCM has produced leaves some question regarding how "MCM" would have been displayed to Amazon users with regard to this listing. The record, however, includes other exhibits that depict the end-user display of Amazon listings, and the court is able to draw reasonable inferences regarding how the title of each listing would likely display for Amazon users.

---

[8] Counsel also conceded that there was "no harm" in including Sandhu in any injunction against the other Oceanside Defendants.

In response, the Oceanside Defendants presented a file purporting to document thousands of Oceanside's Amazon listings, with the full listing titles, for the preceding year. The court's review of a sampling of those listings did not reveal any infringing uses of the MCM or MUSIC CITY METALS marks. However, the court finds that the Oceanside Defendants have not conclusively refuted the evidence of ties to historical infringing listings presented by MCM, including one plainly infringing listing, discussed above, that appears to have been created by the Lucas Pai defendants but that involved a product sold, ultimately, by Oceanside.

Some of the confusion regarding the parties' respective roles in various Amazon listings appears to arise from Amazon's practice of linking and coordinating different vendors' listings for comparable products. While the court heard some general explanation of this practice from the parties' counsel, no knowledgeable witness has yet been presented that could give the court a full and detailed explanation of Amazon's policies in this regard. At this stage in the proceedings, however, the court concludes that MCM has shown a sufficient likelihood of success with regard to its trademark infringement claims against Oceanside, Bedi, and Sandhu.

## V. FINDINGS OF FACT & CONCLUSIONS OF LAW REGARDING ISSUANCE AND SCOPE OF PRELIMINARY INJUNCTION

As a preliminary matter, the court notes that MCM has shown no likelihood of success on the merits against the following defendants: Debbie Pai; Dragon Right Ltd.; D&A Gourmet Co., Ltd.; Lucas Innovation, Inc. (British Virgin Islands); Lucas Innovation, Inc. (Taiwan); Lucas Bbq Co., Ltd.; Suntech Parts & Services, Inc. (U.S.); Shenzhen Hai Pai International Warehousing Services Ltd.; HiPacking Inc.; Hyco International Trading Company L.P.; Jolyn Liu; Chugang Guan; Jia Ning Lui; Bloom International, Inc.; Feng Bai; and Guangzhou Hongshuo Trading Co., Ltd. The court, therefore, will grant no preliminary injunction against those parties. The court will refer to the remaining Lucas Pai Defendants and Oceanside

Defendants, against whom MCM has demonstrated a sufficient likelihood of success, as the "Covered Defendants."

The court must now consider whether MCM would suffer irreparable injury without the injunction, whether the issuance of the injunction would cause substantial harm to others, and whether the public interest would be served by the issuance of the injunction. *City of Pontiac Retired Emps. Ass'n*, 751 F.3d at 430. With regard to the alleged trademark violations, the risk of irreparable injury to MCM is clear. If members of the public are led to believe, mistakenly, that the Covered Defendants' parts are MCM parts, then MCM's reputation and goodwill will hinge on the quality of parts outside its control. The risk of trademark-related harm to MCM is also a risk of harm to the public, because the public benefits from clarity with regard to which company made which replacement part.

The question of the burden on the Covered Defendants depends on the scope of the preliminary injunction under consideration. If MCM were granted the full relief it seeks, the resultant preliminary injunction would, indeed, place a significant burden on the Covered Defendants. For example, it is difficult to see how an entity can successfully sell replacement grill parts if it cannot accurately state which grills its parts will fit. A bar on the use of fitment data first compiled by MCM would, therefore, amount to a significant blow to the Covered Defendants' businesses. Similarly, absolute bars on the use of MCM's model numbers or the name "MCM" would prevent the Covered Defendants from engaging in marketing that, even MCM concedes, is wholly lawful and appropriate. A broad preliminary injunction would also likely harm the public, which stands to benefit from competition and choice in the grill replacement part industry.

A narrow injunction that merely forbids inappropriate uses of the MCM and MUSIC CITY METALS marks, however, would pose significantly less of a risk of harm to either the defendants or the public. The court sees little basis for expecting much meaningful harm to arise from a requirement that the Covered Defendants restrict their use of the "MCM" and "Music City Metals" names to non-trademark uses. The Covered Defendants, moreover, appear to have already altered their listings to comply with the broad TROs, so the necessary additional labor to comply with a narrower preliminary injunction would likely be minimal.

Some of the Covered Defendants raised concerns about how third-party e-commerce portals, such as Amazon, might react to the existence of any injunctive relief at all—in particular, that Amazon might exclude sellers broadly based on even a narrow injunction—but the evidence in the record regarding how Amazon is likely to treat a preliminary injunction directed only at the use of specific trademarks is limited. Bedi has alleged that Amazon withheld payment owed to Oceanside as a response to the court's earlier TRO, but whether any such risk would arise from the type of narrow prohibition that the court is inclined to impose is unclear. (Docket No. 67-1 ¶ 24.)The court, moreover, is hesitant to deny otherwise appropriate relief based solely on speculation regarding how Amazon, a third party, might react. The court, accordingly, will grant MCM a narrowly crafted preliminary injunction that explains that it is not intended to prohibit the Covered Defendants from engaging in the ongoing sale of grill replacement parts on any platform, as long as the Covered Defendants refrain from the conduct specifically prohibited in the injunction. The details of the relief granted will be set forth in the accompanying order.

## CONCLUSION

For the foregoing reasons, the court will vacate all TROs currently pending against the Hyco, Lucas Pai, and Oceanside Defendants and will enter a preliminary injunction against

certain Lucas Pai and Oceanside Defendants, enjoining the improper use of the MCM and MUSIC CITY METALS trademarks.

An appropriate order will enter.

ENTER this 30th day of April 2018.

_____
ALETA A. TRAUGER
United States District Judge